CAMPBELL, Acting Chief Judge.
Appellant, Tiburón Limited, challenges the final summary judgment entered in favor of appellee, Minóla, Inc., in the declaratory action below which sought the proper construction of an arbitration agreement contained in a real estate contract. With some explanation, we affirm.
Tiburón and Minola’s predecessor in interest, Miromar Development, Inc., entered into a real estate contract in which Miromar agreed to purchase approximately fifty acres of Tiburon’s vacant land located in Lee County. The fifty acres were located within the boundaries of an approved 794.22-acre development of regional impact known as Timberland & Tiburón. The contract price was $3,875,000, subject to adjustment in accord with the exact number of acres being purchased by Miromar, to be determined by a later survey. The contract provided in paragraph 3 that title would be conveyed to Miro-mar subject to various matters, including the following:
3.4 A covenant to be recorded at closing in form and substance acceptable to Purchaser and Purchaser’s legal counsel, requiring Purchaser to pay its pro rata share of the construction, operation, maintenance and repair of the water management’s system. The Purchaser’s pro rata share shall be determined by the parties’ engineers acting jointly based upon the scope of the intended development and its impacts upon the said water management system. If no agreement can be reached, such issue shall be submitted to binding arbitration. It is agreed and understood that Purchaser’s contribution to the construction of the water management system shall not exceed TWO HUNDRED SIXTY-FIVE THOUSAND DOLLARS ($265,000.00).
Prior to closing, Tiburón and Miromar entered into an option agreement under which Tiburón granted Miromar an option to purchase up to twenty-four acres of additional land (two parcels of approximately twelve acres each) adjacent to the fifty-acre parcel. The option provided:
At closing, the parties shall make between themselves the necessary adjustments regarding the contributions to the same special assessments as for the Land [the fifty acres], pursuant to the Contract, based *755 upon the actual area of the Subject Land [land purchased pursuant to the Option],
Miromar assigned its interest in the contract and the option to Minóla, a related entity. Subsequently, Minóla closed on the fifty-acre parcel and both of the option parcels. However, the parties could not agree on Minola’s pro rata share of the construction of the surface water management system required under paragraph 3.4. Therefore, the parties entered into an agreement and escrow instructions. The escrow agreement, in its opening paragraph, referred specifically to the contract and the option, and stated that the parties had agreed:
The buyer under these said contracts shall escrow the sum of THREE HUNDRED NINETY-FIVE THOUSAND AND NO/ 100 DOLLARS ($395,000.00) as its maximum obligation for the construction of the particular Surface Water Management System which is to serve the entire Timberland and Tiburón Development of Regional Impact with the actual cost-sharing between the parties to be determined by an arbitrator.
Minola’s $265,000 maximum obligation stated in paragraph 3.4 of the contract had been proportionately increased to $395,000 in accord with the option, based upon Minola’s purchase of the option parcels.
While the parties agreed to proceed to arbitration in accordance with the contract and the escrow agreement, a dispute arose regarding the scope of the matter to be arbitrated shortly after the closing. Minola’s counsel corresponded with Tiburon’s counsel, asserting:
Miromar intends to pursue a claim in excess of $2.4 million for what it believes is Tiburon’s obligation to Miromar for Tibu-ron’s pro rata share of the cost of developing the water management system. That claim obviously will require a determination of the extent to which it can be supported by the intention of the parties set forth in the contract language.
Minola’s counsel, in a subsequent letter, stated Minola’s position:
Both the Agreement and Escrow instructions and the original sales contract itself authorize and direct the arbitrators to determine the question of Tiburón, Ltd.’s obligations to reimburse Minóla for that portion of the overall water management system constructed by Minóla in excess of Minola’s pro rata share for that system. My instructions are to raise this issue with the arbitrators and to present evidence in support of this position.
Tiburón disagreed, asserting that paragraph 3.4 of the contract is directed solely at Minola’s obligation to pay its pro rata share of the construction of the surface water management system, and contains no provision whatsoever for Minóla to pursue a claim against Tiburón. Tiburón asserted that the contract and the escrow agreement, read together, limit the scope of arbitration to the parties’ respective rights to the $395,000 placed in escrow by Minóla at closing. Tibu-rón also alleged that Minola’s escrow of the $395,000, as its maximum pro rata share, belies any claim that the parties had contemplated that Minóla could pursue a claim against Tiburón beyond its claim to the es-crowed funds.
In their cross-motions for summary judgment and at the hearing on the motions, the parties agreed that the documents governing the dispute were the contract, the option, and the escrow agreement. The court subsequently entered an order granting final summary judgment prepared by Minola’s counsel that concluded as follows:
In construing both the Contract and Escrow Agreement, it is clear the intention of the parties was to submit to arbitration the actual cost-sharing between the parties for the construction of the surface water management system which is to serve the entire Timberland & Tiburón Development of Regional Impact.
We find no error in the conclusion of the trial judge as worded. Certainly, it had to be the intention of the parties that in determining either parties’ pro rata share of the costs of the surface water management system the total cost of that system must be determined. However, we conclude that there was no provision in the contract under which Tiburón agreed to assume any liability to Minóla in the event Minóla actually ex *756 pended more in the development of its site than its agreed upon pro rata share of the total cost of construction of the surface water management system. There is no covenant requiring Tiburón to pay money to Minóla. Similarly, there was no provision whereby the parties agreed to submit any such claim made by Minóla against Tiburón to arbitration.
Under the terms of the agreement, Minóla was not free to expend on its portion of the property whatever it chose to spend on the surface water management system and then claim against Tiburón any sums spent in excess of the escrowed funds.
It may be that Minóla could demonstrate a cause of action in a subsequent action against Tiburón for a failure to perform or pay for its obligation for its portion of the surface water management system under the agreements as contemplated at the time of the agreements. Any such action is for a later day.
As construed herein, the judgment of the trial court is affirmed.
PATTERSON AND GREEN, JJ., Concur.